IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| D. M. BOWMAN, INC., | * | |
| Plaintiff, | * | |
| v. | * | |
| CAREFIRST ADMINISTRATORS, *et al.*, | * | Civil Action No.: CCB 02-CV-890 |
| | * | |
| Defendants. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF D.M. BOWMAN'S OPPOSITION TO DEFENDANT
CAREFIRST ADMINISTRATOR'S MOTION TO DISMISS
AND/OR FOR SUMMARY JUDGMENT**

Plaintiff D.M. Bowman, Inc. ("Bowman"), by and through its undersigned counsel, hereby submits this Memorandum in Opposition to Defendant CareFirst Administrator's ("CareFirst") Motion to Dismiss and/or for Summary Judgment ("CareFirst's Motion").

### I.   Introduction

Simply stated, Bowman disputes (and the facts do not support) CareFirst's narrow characterization of its contract obligation to submit claims on behalf of Bowman to Bowman's stop loss insurer for reinsurance coverage. Specifically, CareFirst contends that it was permitted "to determine the manner in which it supplies report information to stop loss carriers." CareFirst Motion at 9. Bowman, however, contends that CareFirst's contract obligation included the submission of information to Bowman's stop loss insurer, Trustmark Insurance Company ("Trustmark"), in accordance with the "claims kit" that CareFirst (and only CareFirst) received from Trustmark. Otherwise, of course, CareFirst's contract obligation would have been, in

essence, no obligation at all. It is CareFirst's failure to perform this duty that provides the crux of this litigation. Thus, the question before the Court is whether there are disputes of material fact concerning the scope of CareFirst's contract obligations under the parties' agreement after Trustmark became Bowman's stop loss insurer in August 1999. Clearly, such disputes exist.[1]

CareFirst relies exclusively upon provisions in the parties' initial agreement, which was executed effective August 1, 1996, and argues that (1) those provisions prevent CareFirst from being an ERISA fiduciary and entitle it to judgment as a matter of law; (2) a black-and-white interpretation of those provisions entitles CareFirst to judgment as a matter of law on Bowman's breach of contract claim; and (3) CareFirst cannot be liable for negligence as a matter of law. CareFirst is mistaken that it is entitled to judgment as a matter of law on each of Bowman's claims. First, whether an entity occupies fiduciary status under ERISA presents a "functional" inquiry that is inherently dependent on the underlying facts. *See* Section III.A, below. Second, the scope of CareFirst's admitted contractual duty presents a disputed question of fact, especially in light of the parties' words and conduct after Trustmark became Bowman's stop loss insurer in August 1999. *See* Section III.B.2, below. Third, even if CareFirst's interpretation of its initial contract duty is accurate, CareFirst undertook an obligation to submit specific information to Trustmark and then performed that duty in a negligent manner. *See* Section III.B.3, below. Because there are disputes of material fact with respect to each of these issues, summary judgment is inappropriate and CareFirst's Motion should be denied.

---

[1] In responding to the arguments that have been made by CareFirst, Bowman does not intend to suggest that it has abandoned or otherwise limited its claims in this litigation against Trustmark. To the contrary, Bowman continues to contend that Trustmark is liable for the losses suffered by Bowman, as alleged in the Amended Complaint.

## II. Disputes of Material Fact

As asserted support for its Motion, CareFirst has submitted a document titled, "Statement of Material Facts Not In Dispute." Despite that name, it is clear that CareFirst is asking this Court to ignore the underlying disputed material facts and simply render judgment in CareFirst's favor. Indeed, most of CareFirst's "Statement" is not of undisputed facts, but is instead a recitation of the literal terms of the August 1996 Claims Processing and Plan Services Agreement (the "1996 Agreement") that Bowman entered into with Willse & Associates, Inc. (now known as CareFirst Administrators). Of course, the 1996 Agreement speaks for itself – it cannot be disputed that it says what it says. That, however, does not make each provision of that Agreement a statement of undisputed fact that supports CareFirst's Motion.

Instead, there are precious few *material facts* recited in CareFirst's Motion that Bowman does not dispute. Bowman, for example, does not dispute that effective August 1, 1996, Bowman entered into the 1996 Agreement so that another entity would have responsibility for the management and processing of Bowman's self-funded employee benefits plan. *See* Affidavit of Linda S. Baer ("Baer Aff.") at ¶ 4, attached as Exhibit 1. Bowman also does not dispute that the 1996 Agreement is attached to CareFirst's Motion for Summary Judgment as CFA 00005-00024. *Id*. Finally, Bowman does not dispute that in or around August 1999, Trustmark became Bowman's stop loss insurer. *Id.* at ¶ 5; CareFirst Motion at 3. All other material facts are disputed. *See* Baer Aff. at ¶¶ 5-8; 11.

Bowman contends that CareFirst failed to submit Bowman's claims information to Trustmark as CareFirst was required to do by the parties' agreement, regardless of what CareFirst's "standard business practices" may have been in and after August 1999. Baer Aff. at

¶¶ 5-8; 11. *See* Section III.B.2, below.[2] There is no dispute that CareFirst was aware of Trustmark's role as Bowman's stop loss insurer. Indeed, Trustmark provided CareFirst a "claims kit" that set forth the type of information, including "trigger diagnosis," that Trustmark required from CareFirst before it would process and pay Bowman's stop loss claims. Baer Aff. at ¶ 6. Bowman did not receive a "claims kit" detailing that information from Trustmark, nor was Bowman responsible for submitting the information that Trustmark required before it would process and pay Bowman's stop loss claims. *Id.* at ¶¶ 6-8.

Further, CareFirst was the only entity with ready access to the information that Trustmark required in order to process Bowman's stop loss claims, including whether a "trigger diagnosis" was involved in any given claim and whether the cumulative amount for any given individual implicated Bowman's stop loss insurance. *Id.* at ¶ 7. The reports that were provided by CareFirst to Bowman did not contain this information. Bowman therefore relied on CareFirst to monitor and report this information to Trustmark in accordance with the "claims kit" that CareFirst received from Trustmark. *Id.* Since August 1999, CareFirst, not Bowman, had responsibility for transmitting information in a timely manner to Trustmark on Bowman's behalf, including "trigger diagnoses," as required by the "claims kit" CareFirst received from Trustmark on Bowman's behalf. *Id.* at ¶ 8. Bowman relied exclusively on CareFirst to provide Trustmark the information it required to ensure that Bowman's claims were paid. *Id.*

---

[2] Even if CareFirst's "standard business practices" were material to this litigation, neither Mr. Korzick nor any other representative of CareFirst has been deposed. Bowman does not presently possess facts to demonstrate whether there is a dispute of fact concerning Mr. Korzick's allegations about CareFirst's "standard business practices." Baer Aff. at ¶ 12. Thus, at the very least, CareFirst's Motion should be held in abeyance pursuant to Federal Rule of Civil Procedure 56(f).

4

In an effort to render its conduct undisputed, CareFirst has submitted the Affidavit of Ted Korzick. That Affidavit does not cure the flaws in CareFirst's Motion and in fact serves only to highlight the significant disputes of material fact that do exist. In his Affidavit, for example, Mr. Korzick asserts that, "CareFirst did not deviate from its standard business practice in submitting claims to [Bowman]", and that "CareFirst submitted claims to Trustmark in the same manner in which it submitted claims to other stop loss insurers." Korzick Affidavit at ¶ 3. Mr. Korzick also states that, "the manner in which CareFirst provided its reporting information to Bowman and to Trustmark comported with its standard business practice." *Id.* at ¶ 4. Finally, Mr. Korzick states that, "the manner in which CareFirst provided reporting information under the Bowman Agreement predates Trustmark Bowman arrangement." *Id.* at ¶ 5. As already demonstrated, CareFirst's allegations implicate a number of disputes of material fact and, therefore, its Motion should be denied. *See also* footnote 2, above.

### III. <u>Argument</u>

A. **CareFirst's Motion Should Be Denied Because Whether CareFirst Acted as an ERISA Fiduciary Presents a Question of Fact That Cannot Be Resolved at This Time.**

  1. **ERISA prohibits the enforcement of language in any contract or agreement purporting to disclaim fiduciary status and liability.**

No one disputes that ERISA defines a "fiduciary" as a person who, with respect to an ERISA plan:

> . . . (i) exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

In its Motion, CareFirst relies upon provisions in the Agreement between CareFirst and Bowman and argues that those provisions prevent CareFirst from being an ERISA fiduciary under Section 1002(21)(A) as a matter of law. CareFirst's Motion at 2-7. ERISA itself belies this argument. Specifically, and with exceptions not relevant to this case, ERISA provides that, "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." 29 U.S.C. § 1110(a).

Accordingly, if CareFirst in fact acted in a fiduciary capacity, as defined in Section 1002(21)(A) of ERISA, any interpretation of the agreement between CareFirst and Bowman that purports to prevent CareFirst from being found liable as a fiduciary is void. *See, e.g.*, *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1460 (9th Cir.), *cert. denied*, 516 U.S. 914 (1995). In other words, if an ERISA fiduciary writes words in an instrument exonerating itself of fiduciary responsibility, the words, even if agreed upon, are generally without effect. *IT Corp. v. General Am. Life Ins. Co.*, 107 F.3d 1415 (9th Cir. 1997)(denying third party administrator's motion for summary judgment because it could be a fiduciary, despite contract language limiting the administrator to "ministerial" duties). Clearly, "buzz words" in a contract do not permit a party to avoid fiduciary responsibility because, "[t]he issue is not just how the duties are characterized, but what they are." *Id. See also Givens v. American Benefit Corp.*, 1993 U.S. App. LEXIS 11500 (4th Cir. May 17, 1993)(specifically noting that the determination of whether one acts as a fiduciary under ERISA depends on whether the person was in fact acting as a fiduciary with respect to the particular activity at issue), *citing Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61-62 (4th Cir. 1992).

This approach is consistent with the "functional" inquiry employed by a majority of courts when determining whether a person or entity occupies fiduciary status under ERISA. *See, e.g., Harold Ives Trucking Co. v. Spradleu & Coker, Inc.*, 178 F.3d 523, 526 (8th Cir. 1999)(although the contract with the third party administrator provided that it would have no discretionary authority and would provide only ministerial services, this language does not prevent the adminstrator from acting as a fiduciary); *Reich v. Lancaster*, 55 F.3d 1034, 1048 (5th Cir. 1995)(exericise of discretionary authority can make one a fiduciary despite express contractual language rejecting fiduciary status); *Acosta v. Pacific Enterprises*, 950 F.2d 611, 618 (9th Cir. 1991)(a person's "actions, not the official designation of his role, determine whether he enjoys fiduciary status"); *Donovan v. Mercer*, 747 F.2d 304, 305 (5th Cir. 1984)("If it Talks Like a Duck . . .").

This approach is further supported by Congress' intent that, "th[e] definition [of fiduciary] be broadly construed and 'include persons who have authority and responsibility with respect to the matter in question, regardless of their formal title.'" *Tower Loan of Miss. v. Hospital Benefits, Inc.*, 200 F. Supp. 2d 642, 646 n.3 (S.D. Miss. 2001)(the fact that one is not designated as a "fiduciary" is not determinative of its status as a fiduciary), *citing McNeese v. Health Plan Marketing, Inc.*, 647 F. Supp. 981, 983-84 (N.D. Ala. 1986), *quoting Donovan*, 747 F.2d at 308. To that end, "ERISA defines fiduciary not in terms of formal trusteeship, but in functional terms of control and authority over the plan, thus expanding the universe of persons subject to fiduciary duties – and to damages – under § 409(a)." *Kayes v. Pacific Lumber Co.*, 51 F.3d at 1459 (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993)). Accordingly, summary judgment is inappropriate at this juncture especially, where, as here, there have been no depositions of CareFirst's corporate representative(s). *See* footnote 2, above.

**2.      The cases cited in CareFirst's Motion do not support the result it seeks.**

In its Motion, CareFirst relies primarily on *Kyle Railways v. Pacific Admin. Servs., Inc.*, 990 F.2d 513 (9th Cir. 1993). That case, however, does not support the result that CareFirst seeks.[3]

In *Kyle,* the district court granted the defendant's Rule 12(b) motion to dismiss each of plaintiff's claims. On appeal plaintiff argued: (1) that the agreement gave defendant sufficient discretion over the plan to make it a fiduciary; and (2) regardless of the agreement, defendant actually exercised control over plan assets.

The Ninth Circuit affirmed the district court's dismissal of the plaintiff's breach of fiduciary duty claims against third party administrator because it was not a fiduciary within the

---

[3] For a variety of reasons, the other cases cited in CareFirst's Motion do not support the entry of summary judgment in CareFirst's favor. In most of the cited cases, for example, decisions were rendered on motions for summary judgment *after* a factual record had been developed through discovery, where disputes of fact did not exist and/or based on stipulations between the parties. *E.g., Givens v. American Benefit Corp.*, 1993 U.S. App. LEXIS 11500 (4th Cir. May 17, 1993)(granting defendant's motion for summary judgment based on a developed record, including stipulations between the parties concerning the specific activities performed by defendant); *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323 (9th Cir. 1985)(nature of activities conducted by third party administrator was not disputed); *Kodes v. Warren Corp.*, 24 F. Supp. 2d 93, 101 (D. Mass. 1998)(motion for summary judgment entertained following discovery); *Alexian Brothers Med. Ctr. v. South Lorraine Merchants Assoc. Health and Welfare Plan*, 1998 U.S. Dist. LEXIS 20271, at *13-24 (N.D. Ill. Dec. 24, 1998)(nature of activities conducted by third party administrator was not disputed); *Crocco v. Xerox Corp.*, 956 F. Supp. 129, 137 (D. Conn. 1997)(finding regarding fiduciary status was based, in part, on "the facts presented at trial"); *Colleton Regional Hosp. v. MRS Med. Review Sys., Inc.*, 866 F. Supp. 896 (D.S.C. 1994)(motion to dismiss granted because counsel for the parties stipulated that the third party administrator was not a fiduciary under ERISA); *Colleton Regional Hosp. v. MRS Med. Review Sys., Inc.*, 866 F. Supp. 891 (D.S.C. 1994)(dismissing amended complaint because it contained no allegations that could support causes of action against third party administrator as an ERISA fiduciary). In other cases cited in CareFirst's Motion, the issue was simply not before the court. *E.g.*, *Buckley Dement, Inc. v. Traveler's Plan Admins.*, 39 F.3d 784 (7th Cir. 1994)(plaintiff did not challenge on appeal the district court's ruling that the third party administrator was not a fiduciary). And in other cases, the issue of fiduciary status was considered in the context of removal to federal court and presented an entirely different issue and analysis. *E.g.*, *Michigan Affiliated Healthcare Sys. v. CC Sys. Corp.*, 139 F.3d 546 (6th Cir. 1998).

meaning of ERISA.  <u>Importantly, it was not disputed (or alleged) in *Kyle* that the alleged fiduciary did anything other than pay claims.</u>  In light of this, the Court explained that third party administrators like defendant were not fiduciaries when performing ministerial duties or processing claims.  The Court, however, did not hold that the language in the contract at issue in *Kyle* precluded defendant from being an ERISA fiduciary as a matter of law.  Nor could it have rendered such a ruling, since Section 1110(a) of ERISA precludes that result.  Thus, CareFirst's reliance on *Kyle* is misplaced.

Although not cited in CareFirst's Motion, the Ninth Circuit's later decision in *IT Corp. v. General Am. Life Ins. Co.*, 107 F.3d 1415 (9th Cir. 1997) is more akin to this litigation.  In *IT Corp.*, the Court held that a third party administrator of a health plan could be a fiduciary despite contract language limiting the administrator to "ministerial" duties.  Accordingly, summary judgment was improper because there were disputes of fact regarding the administrator's discretionary authority.  It may turn out, held the Court, that a fully developed record could demonstrate that the defendant indeed had no discretion.  As it stood, however, and despite the express language of the contract, the record did not now show that defendant's duties were purely ministerial.

CareFirst does not address (or even cite) *IT Corp.* in its Motion.  The circumstances and posture of that case, however, closely resemble the circumstances and posture of this litigation.  By contrast, and as discussed, the circumstances and posture of *Kyle* have no application to this litigation.  Thus, *IT Corp.* should guide this Court's denial of CareFirst's Motion.

**B.     CareFirst's Motion for Judgment on Bowman's State Law Claims Should Be Denied.**

**1.     If CareFirst is not an ERISA fiduciary, Bowman's state law claims are not preempted by ERISA.**

As an initial matter, CareFirst claims that Bowman's state law claims are preempted by ERISA. *See* CareFirst Motion at 7-8. That contention is incorrect. The United States Supreme Court has cautioned that, "some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 96-97 (1983). In enacting Section 514(a), Congress did not intend to preempt "traditional state-based laws of general applicability [that do not] implicate the relations among the traditional ERISA plan entities," which include the employer, the plan fiduciaries, the plan, and the beneficiaries. *Coyne & Delany v. Selman*, 98 F.3d 1457, 1469 (4th Cir. 1996).

Therefore, if CareFirst is not an ERISA fiduciary, Bowman's state law claims survive because they would not implicate relations between Bowman and an ERISA fiduciary, but would instead involve the terms of a collateral agreement between CareFirst and Bowman. *See, e.g., Geweke Ford v. St. Joseph's Omni Preferred Care, Inc.*, 130 F.3d 1355 (9th Cir. 1997)(contract claims against third party provider of insurance and administrative services were not preempted where allegation was of failure of administrator to file claims with insurer and not a failure to properly administer the plan; claims did not "depend upon ERISA, and d[id] not affect (sic) the relationships between the principal ERISA participants."); *Stonewall Jackson Mem'l Hosp. v. American United Life Ins. Co.*, 963 F. Supp. 553, 563 (N.D. W.Va. 1997)(the legal rights and obligations between the parties flowed from the terms of a collateral annuity contract and would

10

not have required the plaintiff to prove the existence of legal obligations arising solely under the terms of an ERISA regulated plan).[4]

Simply stated, CareFirst is not entitled to summary judgment as a matter of law even if this Court determines that CareFirst was not an ERISA fiduciary. Thus, CareFirst's suggestion of ERISA preemption should be rejected. And because there are disputes of material fact related to Bowman's state law claims, CareFirst's Motion should be denied in its entirety.

### 2. There is a dispute over the scope of CareFirst's contractual obligations as well as whether CareFirst breached its contract duties.

It is undisputed that CareFirst had an obligation to submit information to Bowman's stop loss insurer. CareFirst Motion at 9, *citing* 1996 Agreement at paragraph G (CFA 00009). With respect to that contractual duty, CareFirst argues that it was permitted "to determine the manner in which it supplies report information to stop loss carriers." *Id. See, e.g.,* Korzick Affidavit at ¶¶ 3-4 ("CareFirst submitted claims to Trustmark in the same manner in which it submitted claims to other stop loss insurers" and in accordance with "its standard business practice."). Bowman contends that CareFirst's contractual obligation included the submission of information to Trustmark in accordance with the "claims kit" CareFirst received from Trustmark. Baer Aff. at ¶¶ 6-8. Otherwise, of course, CareFirst's contract obligation would have been rendered

---

[4] "When an ERISA plan's relationship with another entity is not governed by ERISA, it is subject to state law." *Smith v. Provident Bank*, 170 F.3d 609, 617 (6th Cir. 1999). *See also, e.g., Tie Communications, Inc. v. First Health Strategies, Inc.*, 1998 WL 171126 (D. Kan. 1998)(claims not preempted where third party administrator was not a fiduciary); *Union Health Care, Inc. v. John Alden Life Ins. Co.*, 908 F. Supp. 429 (S.D. Miss. 1995)(claim against administrator was not preempted because it related "solely to [the administrator's] duties vis-à-vis the reinsurance contract"); *Fox, Curtis & Assocs., Inc. v. Employee Benefit Plans, Inc.*, 1993 WL 265474 (N.D. Ill. 1993) (claim against administrator and stop-loss insurer alleging breach of contract not preempted in case that did not involve adjudication of discretionary administrative decision-making and 'any effect (sic) that Defendants' breach of their obligations may have on plan beneficiaries is incidental to [employer's] claims.").

11

meaningless effective August 1999 when Trustmark became Bowman's stop loss insurer. This dispute over the scope of CareFirst's admitted contractual duty is a sufficient basis upon which to deny CareFirst's Motion.

In an effort to dodge the inevitable, CareFirst suggests that its "standard business practices" is the controlling standard because there is no subsequent writing sufficient to alter the terms of the 1996 Agreement. *See* CareFirst Motion at 9 (no signed document making specific reference to the 1996 Agreement exists). It is well settled, however, that parties to a contract "may agree to vary its terms and enter into a new [agreement] embodying the changes agreed upon and a subsequent modification of a written contract may be established by a preponderance of the evidence." *Cole v. Wilbanks*, 226 Md. 34, 38, 171 A.2d 711 (1961). Such an agreement need not be in writing or expressly stated: "'Assent to an offer to vary, modify or change a contract may be implied and found from circumstances and the conduct of the parties showing acquiescence or agreement.'" *Edell & Assocs., P.C. v. Law Offices of Peter G. Angelos*, 2001 U.S. App. LEXIS 19038, *40-41, No. 00-2069 (4th Cir. Aug. 24, 2001)(quoting *Cole*, 226 Md. at 38).[5]

This is true notwithstanding the existence of a written agreement that any change to a contract must be in writing – the parties may still, by subsequent oral agreement and by their conduct, waive the requirements of a written contract. *See, e.g., Taylor v. University Nat'l Bank*, 263 Md. 59, 63, 282 A.2d 91 (1971)("the conduct of parties to a contract may be evidence of a

---

[5] *See also Fantle v. Fantle*, 140 Md. App. 678, 688, 782 A.2d 377 (2001)(an agreement to modify a written obligation in an agreement may be implied without "ever expressing it in words" where the parties' subsequent conduct evidences a "tacit understanding"); *Berringer v. Steele*, 133 Md. App. 442, 503-04, 758 A.2d 574 (2000)(summary judgment inappropriate where plaintiff claimed that the parties' conduct subsequent to the execution of a written retainer agreement supplemented or modified that agreement to include other duties).

12

subsequent modification of their contract"), *citing Freeman v. Stanbern Const. Co.*, 205 Md. 71, 79, 106 A.2d 50 (1954)(a subsequent oral modification of a written contract may be established by a preponderance of the evidence). As the Maryland Court of Special Appeals has recognized:

> Attempts of parties to tie up by contract their freedom of dealing with each other are futile. The contract is a fact to be taken into account in interpreting the subsequent conduct of the plaintiff and the defendant, no doubt. But it cannot be assumed, as matter of law, that the contract governed all that was done until it was renounced in so many words, because the parties had a right to renounce it in any way and by any mode of expression they saw fit. They could substitute a new oral contract by conduct and intimation, as well as by express words.

*Hoffman*, 20 Md. App. at 289, *quoting Bartlett v. Stanchfield*, 148 Mass. 394, 395, 19 N. E. 549 (1889).

Despite these settled principles of contract law, CareFirst stands on the literal terms of its August 1, 1996 Agreement with Bowman. CareFirst Mem. at 8-9. CareFirst concludes that because the contract does not literally include the terms "claims kit" or a "trigger diagnosis," CareFirst could not have breached the Agreement as a matter of law. *Id.* CareFirst also contends that it is insulated from all liability because, according to CareFirst, it used its "standard business practices" to transmit information to Trustmark. *Id.* at 10.

CareFirst's simplistic approach to divining the binding terms of the parties' agreement does not comport with governing law. CareFirst conveniently ignores the circumstances that developed after the Agreement became effective in August 1996. CareFirst, for example, ignores that: (1) Trustmark was introduced into the mix in August 1999; (2) CareFirst was aware of Trustmark's role as Bowman's stop loss insurer; (3) Trustmark provided CareFirst a "claims kit" that set forth the type of information, including "trigger diagnosis," that Trustmark required

from CareFirst before it would process and pay Bowman's stop loss claims; (4) CareFirst, not Bowman, received the "claims kit" from Trustmark; (5) CareFirst was the only entity with ready access to the information that Trustmark required in order to process Bowman's stop loss claims, including whether a "trigger diagnosis" was involved in any given claim and whether the cumulative amount for any given individual implicated Bowman's stop loss insurance; (6) the reports that were provided by CareFirst to Bowman did not contain this information; (7) CareFirst, not Bowman, had responsibility for transmitting information in a timely manner to Trustmark on Bowman's behalf, including "trigger diagnoses," as required by the "claims kit" CareFirst received from Trustmark on Bowman's behalf; and (8) Bowman relied exclusively on CareFirst to monitor the claims of Bowman's employees and provide Trustmark the information it required, in accordance with the "claims kit," to ensure that Bowman's stop loss claims were paid.  Baer Aff. at ¶¶ 5-8; 11.

Clearly, there are disputes of material fact concerning the nature and scope of CareFirst's contract obligation pursuant to the 1996 Agreement, as that Agreement may have been modified over the years by both words and conduct, as well as disputes of material fact over whether CareFirst breached any contract obligations it had to Bowman.  *See Hoffman v. Glock*, 20 Md. App. 284, 289, 315 A.2d 551 (1974)(whether subsequent conduct amounts to a modification of a contract is a question to be decided by the trier of fact).  Thus, CareFirst's Motion should be denied.

**3.     There is a dispute of material fact over whether CareFirst acted negligently.**

It is undisputed that CareFirst had an obligation to submit information to Bowman's stop loss insurer.  *See* CareFirst Motion at 9, *citing* 1996 Agreement at paragraph G (CFA 00009). With respect to that contractual duty, CareFirst argues that CareFirst was allowed "to determine

the manner in which it supplies report information to stop loss carriers." *Id.* Bowman, however, alleges that CareFirst owed a duty to (1) provide certain claims processing and plan services for Bowman, including a duty to identify and submit claims eligible for reinsurance coverage; (2) provide the necessary information to Bowman's reinsurance carrier, Trustmark; (3) assist with the administration of the excess health insurance coverage, as well as assisting Bowman with the renewal of the reinsurance policy. Amended Complaint at ¶ 30. CareFirst breached its duties to Bowman by, among others, failing to identify and submit claims eligible for reinsurance coverage, and by failing to provide Trustmark and/or its agents with certain medical information concerning Bowman's employees. *Id.* at ¶ 31.

CareFirst's failure to transmit this information, contract notwithstanding, can provide the basis for a claim of negligence: Even if CareFirst's initial (and undisputed) contract duty to transmit information to Bowman's stop loss insurer did not include the obligation to submit "trigger diagnosis" in the manner specified in Trustmark's "claims kit", CareFirst undertook that duty and then performed its duty in a negligent manner that caused loss to Bowman. *See Mesmer v. Maryland Auto. Ins. Fund,* 352 Md. 241, 254, 725 A.2d 1053 (1999)(when defendant undertakes a contractual obligation in violation of the appropriate standard of care, plaintiff may maintain a tort action); *Otis Elevator Co. v. Embert*, 198 Md. 585, 597-598, 84 A.2d 876, 881-882 (1951)(the distinction is "between conduct, in breach of a contract, which constitutes only a breach of contract and conduct which also constitutes a breach of duty, arising out of the nature of the work undertaken"); *Miller v. Schaefer*, 80 Md. App. 60, 74, 559 A.2d 813, 819-820 (1989), *aff'd*, 322 Md. 297, 587 A.2d 491 (1991)(the defective performance of a contractual undertaking may give rise to an action both in tort or in contract); *Chew v. Meyer*, 72 Md. App.

15

132, 142, 527 A.2d 828 (1987)(summary judgment properly denied on concomitant claims for breach of contract and negligence).

Finally, CareFirst's inconsistent arguments are insufficient for it to escape Bowman's claims of negligence. On the one hand, CareFirst contends that it did not have the contractual obligation alleged by Bowman and, as a result, CareFirst is entitled to judgment on Bowman's breach of contract claim. CareFirst Motion at 8-9. On the other hand, CareFirst contends that because Bowman "does not allege any independent duty on the part of CareFirst" outside of the 1996 Agreement, CareFirst is entitled to judgment on Bowman's negligence claims. *Id.* at 11-12. In other words, CareFirst disputes that the duties alleged by Bowman are included in the 1996 Agreement in an effort to avoid Bowman's breach of contract claim, yet embraces those duties as part of the 1996 Agreement in an effort to avoid Bowman's negligence claims. CareFirst cannot have it both ways. This case is markedly different from the case relied on by CareFirst in its Motion. *See* CareFirst Motion at 11-12, *relying on Coleman v Columbia Credit Co.*, 42 Md. App. 198, 399 A.2d 943 (1970). In *Coleman*, the plaintiffs' negligence count stated, in its entirety:

> The plaintiffs incorporate by reference paragraphs 1 and 2 of Count I. And the plaintiffs say that all damages complained of were caused solely by the negligence of the defendants and its failure to comply with the contract with the plaintiffs without negligence on the part of the plaintiffs thereunto contributing.

*Coleman*, 42 Md. App. at 202-03, 399 A.2d at 945. Significantly, in *Coleman* there was no dispute over the scope and nature of the defendant's contract duties. As explained, such is not the case here. Thus, CareFirst's Motion should be denied.

## IV. Conclusion

For the foregoing reasons, CareFirst's Motion for Summary Judgment should be denied in its entirety or, at the very least, held in abeyance pending completion of discovery pursuant to Federal Rule of Civil Procedure 56(f).

Dated:  March 31, 2003                              Respectfully submitted,


                                                         /s/
                                        David L. Cole, Jr., Bar No. 08109
                                        (signed by Kelly J. Davidson with permission of David L. Cole, Jr.)


                                                         /s/
                                        Kelly J. Davidson, Bar No. 25217
                                        Ober, Kaler, Grimes & Shriver
                                        A PROFESSIONAL CORPORATION
                                        120 E. Baltimore Street
                                        Baltimore, Maryland  21202-1643
                                        (410) 685-1120
                                        (410) 547-0699 (facsimile)

                                        Attorneys for D.M. Bowman, Inc.