IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| D. M. BOWMAN, INC., | * | |
| Plaintiff, | * | |
| v. | * | |
| CAREFIRST ADMINISTRATORS, *et al.* | * | Civil Action No.: CCB 02-CV-890 |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \*

**DEFENDANT TRUSTMARK INSURANCE COMPANY'S OPPOSITION TO
DEFENDANT CAREFIRST ADMINISTRATORS'
MOTION FOR SUMMARY JUDGMENT**

Comes now Defendant Trustmark Insurance Company ("Trustmark"), by and through their undersigned counsel, and hereby opposes the Motion for Summary Judgment filed by Defendant CareFirst Administrators ("CareFirst"). As set forth below, there is a genuine dispute of material fact so as to preclude summary judgment in favor of CareFirst.

I.   INTRODUCTION

Plaintiff Bowman provided health insurance to its employees through a self-insured employee benefit plan. On August 1, 1996, Bowman entered into a "Claims Processing and Plan Services Agreement," under which CareFirst was to serve as the third-party administrator (TPA) for the plan. On August 1, 1999, Bowman entered into a "Stop Loss" Contract with Trustmark. Pursuant to the Stop Loss Contract, Trustmark was to provide stop loss insurance coverage for claims submitted on behalf of Bowman employees, in return for premiums paid by Bowman. CareFirst was responsible for assisting Bowman with the processing and managing of claims submitted to Trustmark under that Contract, as well as for assisting with renewal of the contract.

145636.1

Pursuant to the terms of the Trustmark contract, Trustmark was to be notified of certain "trigger" diagnoses related to Bowman employees that could trigger insurance coverage for the employees at issue under the Stop Loss contract. This information was to be provided by Bowman, or by CareFirst on Bowman's behalf, to defendant American Stop Loss ("ASL"), a stop loss brokerage company, who was to provide the claim information to RMTS, a marketer of insurance products, who, in turn, would provide the information to Trustmark, the insurer. Trustmark maintains that with regard to the subject claims, it was not provided with the requisite information and, therefore, properly denied payment on those claims.

Discovery in this case is still on-going. At this juncture, there exists genuine dispute of material fact so as to preclude summary judgment. Moreover, Trustmark submits that the evidence adduced to date reveals that it neither breached its contract nor was negligent so as to liable for any losses allegedly sustained by Bowman. For these reasons, summary judgment, at least as to the claims of breach of contract and negligence against CareFirst, is inappropriate and CareFirst's motion should be denied.

II.     STANDARD FOR SUMMARY JUDGMENT

Under F.R.C.P. 56(c), summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In *Celotex Corp. v. Catrett*, the Supreme Court held that in consideration of motions for summary judgment, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." 477 U.S. 317, 325 (1986). The Court has directed trial judges to scrutinize the "actual quantum and quality of proof necessary to support liability" in evaluating the merits of

145636.1

summary judgment motions and the need for trial. *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 254 (1986).[1] After extensive discovery by which the issues on motion have undergone investigation through depositions, interrogatories, and document production, the trial court may properly conclude that the need for a trial is unnecessary. *See id.* at 250. "Summary judgment is not appropriate when there is an issue of fact for a jury to determine at trial, which is the case when there is sufficient evidence favoring the non-moving party upon which a jury can return a verdict for that party." *Thomson v. Verizon MD, Inc.* 140 F.Supp.2d 546, 550, quoting *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir.1991).

In the instant case, it is apparent that summary judgment is inappropriate. Under the existing Scheduling Order, discovery does not close until May 14, 2003. Indeed, no depositions have yet been taken. Moreover, the record in this case reveals that genuine dispute of material fact exists so as to preclude summary judgment. For these reasons alone, notwithstanding the substantive bases for denial of the Motion, CareFirst's Motion for Summary Judgment must be denied.

III. THERE EXISTS GENUINE DISPUTE OF MATERIAL FACT SO AS TO PRECLUDE SUMMARY JUDGMENT

    A. The Evidence Is Insufficient To Enable This Court To Hold That CareFirst Did Not Breach Its Contractual Duty To Bowman

In its Motion, CareFirst cites to various provisions of the contract between Bowman and CareFirst as "evidence" that there is no genuine dispute of material fact. However, CareFirst's copying of the contract's terms – which in and of themselves are not in dispute - does not amount to a "Statement Of Material Facts Not In Dispute." CareFirst admits that it was aware of

---

[1] *Celotex* and *Liberty Lobby* were two of a trilogy of cases decided by the Supreme Court concerning summary judgment. The companion case was *Matsushita Electrical Industrial Co. v. Zenith*, 475 U.S. 574 (1986).

Trustmark's role as Bowman's stop loss insurer, yet CareFirst fails to consider its obligations pursuant to the "claims kit" information provided to CareFirst by Trustmark.

In a July 11, 2000 correspondence from Patrick Moore at ASL to Cindy Bullock at CareFirst, CareFirst was advised that on behalf of the stop loss insurer (Trustmark), ASL was to receive "timely notification" of all cases in excess of 50% of the deductible and in excess of the deductible, and such notice was to "include diagnostic information on 'trigger' diagnoses such as AIDS, premature birth, spinal cord injuries and any other claim with the potential for high costs or protracted run out. Failure to provide these reports may result in the denial of otherwise eligible reimbursements to our mutual client." See, July 11, 2000 letter from Patrick Moore to Cindy Bullock at CareFirst (attached as Exhibit 1).

In addition, the claims kit provided to CareFirst, required, *inter alia*:

> Written notification as to when a claimant reached or exceeded 50% of the Specific Deductible. This notification should be sent *in advance* of the claimant actually exceeding the Specific Deductible. Written notification of a potential excess claim must also be provided whenever there is a reasonable expectation – based on the claimant's diagnosis and prognosis – that a claimant will exceed the Specific Deductible, *regardless of whether or not the 50% point has been reached*.

See, July 28, 2000 letter from Patrick Moore to Cindy Bullock at CareFirst (attached as Exhibit 2) (emphasis in original).

Pursuant to the terms set forth above, Trustmark denied payment on certain claims based on the fact that it was not provided with the requisite claim information. See, June 14, 2001 letter from Ronald Geck to Patrick Moore (attached as Exhibit 3). Moreover, Trustmark had already set the renewal terms and premium rates prior to receipt of the subject claims, based on Bowman's representation of "no known catastrophic claims." See, *id*. Clearly, whether CareFirst satisfied the clear terms of the claims kit requirements regarding the reporting of

- 4 -

catastrophic claimants and trigger diagnoses is in dispute. The declaration from Theodore Korzick that "CareFirst submitted claims to Trustmark in the same manner in which it submitted claims to other stop loss insurers," and that CareFirst's reporting manner "comported with its standard business practice" is neither relevant to the issues in this case nor probative of whether there is a genuine dispute of material fact. See, Korzick Affidavit at ¶¶ 3,4, attached to CareFirst's Motion.

### B. There Is Dispute Of Fact As To Whether CareFirst Was Negligent In Performing Its Third Party Administrator Functions On Behalf Of Bowman

In addition, there exists a dispute of material fact as to whether Carefirst owed a duty to Bowman to provide Trustmark with required claim information regarding trigger diagnoses and notice of potential excess claims. In its Motion, CareFirst asserts that it had owed no "duty" to Bowman beyond the terms of the original 1996 Agreement entered into between the parties and that it had no contractual duty to supply specified information to stop loss insurers on behalf of Bowman. (See, Agreement attached to CareFirst's Motion for Summary Judgment). Conversely, in its Opposition to CareFirst's Motion, Bowman submits that CareFirst was required to submit the necessary information on behalf of Bowman, ostensibly pursuant to the claims kit information provided to CareFirst.

There exists a genuine dispute of material fact as to CareFirst's claim processing responsibilities as TPA of Bowman's employee benefit plan, which may certainly have included compliance with the claims kit reporting requirements. Under Maryland law, the course of conduct between parties can serve to modify the terms of a contract between them and that determination is a question of fact to be determined by the trier of fact. *Hoffman v. Glock*, 20 Md.App. 284, 315 A.2d 551 (1974). In that regard, as evidenced by the Affidavits attached to both CareFirst's Motion and Bowman's Opposition, there exists a genuine dispute of material

145636.1

fact as to CareFirst's obligations to Bowman with regard submitting information to Trustmark in compliance with the Trustmark claims kit.

In this case, CareFirst was provided with the requisite information regarding the handling of claims for Bowman, including stop loss insurance claims. See, Exhibits 1, 2, 3. Bowman asserts that it did not receive the claims kit that set forth the necessary claim reporting requirements, thus it could not provide the necessary information, and that it relied on CareFirst to provide the necessary information to Trustmark. See, Affidavit of Linda S. Baer, attached to Plaintiff's Opposition to Motion for Summary Judgment. At a minimum, a dispute of material fact exists as to whether CareFirst met its obligations to Bowman under the Agreement.

IV. CONCLUSION

For these reasons, as well as those otherwise appearing to the Court, CareFirst's Motion for Summary Judgment should be denied

> Respectfully submitted,
>
> _____/s/_____
> Angela Williams Russell (Bar No. 15227)
> David A. Seltzer (Bar No. 15036)
> Wilson, Elser, Moskowitz,
> Edelman & Dicker LLP
> 1341 G Street, NW, Fifth floor
> Washington, DC 20005
> (202) 626-7660
> Fax (202) 628-3606
> *Attorneys for Defendants Trustmark*
>   *Insurance Company and RMTS Associates, LLC*

145636.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Opposition to Motion for Summary Judgment was filed electronically and mailed postage prepaid on this 7th day of April, 2003 to:

Charles J. Steele, Esquire
CareFirst BlueCross BlueShield
550 12th Street, SW
Washington, DC 20065

David L. Cole, Esquire
Kelly J. Davidson, Esquire
Ober, Kaler, Grimes & Shriver, A Professional Corporation
120 East Baltimore Street
Baltimore, Maryland 21202

Edward J. Baines, Esquire
Jennifer B. Speargas, Esquire
Saul, Ewing LLP
100 South Charles Street
Baltimore, Maryland 21202

Paul M. Finamore, Esquire
Brett A. Buckwalter, Esquire
Niles, Barton & Wilmer, LLP
11 South Calvert Street
Suite 1400
Baltimore, Maryland 21202

/s/
David A. Seltzer

145636.1