July 28, 2000

Ms. Cindy Bullock
CareFirst Administrators
100 S. Charles Street—Tower II 9th Floor
Baltimore, MD 21030

RE: DM Bowman
    Policy Effective Date: 8/1/2000
    Specific Deductible: $75,000.00
    Contract Basis: 24/12
    Stop Loss Carrier: Trustmark Insurance Company

Dear Cindy:

It is our understanding that CareFirst is the Third Party Administrator for DM Bowman. We are pleased to be working with you in mutual service of a valued client. I invite you to review the enclosed claims kit from the carrier that outlines claim documentation required by the carrier when filing requests for excess reimbursement. As part of the service we provide to our clients, American Stop Loss offers to track all claims reports and forward them to the carrier. I'd like to briefly outline the claims information and documentation needed in order for us to file reports with the stop loss carrier for excess reimbursement requests on the client's behalf:

### I. Specific Claims
*Monthly Reporting*
- Written notification as to when a claimant reached or exceeded 50% of the Specific Deductible. This notification should be sent *in advance* of the claimant actually exceeding the Specific Deductible. Written notification of a potential excess claim must also be provided whenever there is a reasonable expectation—based on the claimant's diagnosis and prognosis—that a claimant will exceed the Specific Deductible, *regardless of whether or not the 50% point has been reached*. Some examples of these "trigger" diagnoses would be organ transplants, AIDS, premature birth, and cancer. Reports on all potential excess claimants should be provided to our office on a monthly basis with monthly and year-to-date paid claim totals as well as current diagnosis and prognosis.

*Formal Reimbursement Requests (refer to enclosed claims kit for actual carrier requirements)*
- A copy of the claimant's enrollment records. This documentation should include the original effective date along with any coverage changes (e.g. addition/deletion of dependent coverage, COBRA effective date, documentation of Medicare coverage, etc.)
- Current diagnosis and prognosis information. This data should include specific ICD-9 and CPT procedure codes for each claim payment.
- A paid claims report/check register for all claim payments that includes the incurred and paid dates of each claim.
- Copies of Explanation of Benefit (EOB) sheets detailing how each individual claims payment was processed. Specifically, the EOB should note the amount charged, amount allowed, any deductible applied, the coinsurance percentage and the specific reasons for the denial of any charges
- Copies of itemized provider bills (inpatient admissions, outpatient services, and prescription drugs) that correspond to the check register and EOB's.
- Copies of all Case Management notes for all claimants referred to Large Case Management.
- Copies of all third party/subrogation investigations, to include a copy of any police report (e.g. auto accident) and any written reports to insurers.
- Documentation of any hospital bill audits, price discounts, and precertifications for inpatient stays.



EXHIBIT
2

### II. Aggregate Claims

*Monthly Reporting*
- Written reports showing the monthly enrollment and paid claims totals—as well as the year-to-date claim totals—must be provided to the carrier on a monthly basis *in advance* of an actual request for reimbursement.

*Formal Reimbursement Requests (refer to enclosed claims kit for actual carrier requirements)*
- An employee eligibility listing showing all employees covered under the plan, along with any dependents, the effective date of coverage and termination date where applicable.
- A list of claims with an accumulated total showing incurred dates, payment amounts and the employee's/claimant's name.
- Payment of any benefits not included in the Aggregate Excess coverage should be identified if they are included in the paid claim listing (e.g. prescription drugs, vision, dental).
- Identification and deduction of any refunds, voids, and payments outside of the Plan if they have not been previously adjusted from the paid claims list.
- When Aggregate Coverage allows for dates of service prior to the effective date (e.g. a "run-in" contract) the paid claims data should include service dates within the run-in period in addition to the normal policy period. Also, when Aggregate Coverage allows for claims payments after the termination date (e.g. a "run-out" contract), the paid claims data should include payment information within the run-out period in addition to the normal policy period.

Please also note that should the client decide to have formal reimbursement requests submitted directly to the carrier, American Stop Loss would appreciate receiving formal written notice of that decision, and we would also like to be carbon copied on all claims reports sent directly to the carrier. Should you have any questions or concerns, please feel free to contact me. Thank you for your assistance.

Sincerely,


Patrick Moore
Claims Manager
Phone: 800-944-7659, extension 3016
Fax : 508-799-0161
Email: pmoore@americanstoploss.com

Enc.
cc: Walter Coolidge, ASL; Pete Gavin, ASL; Barbara Cummons, Willis Corroon of MD

2