

RMTS Associates, LLC
Six Harrison Street
New York, NY 10013

TEL: 212.925.0017
FAX: 212.219.8185

**VIA FACSIMILE**

June 14, 2001

Mr. Patrick Moore
American Stop Loss
250 Commercial Street
Suite 200
Worcester, MA 01608

RE:   **D.M. BOWMAN**
         **Claimants: Heisler, Fisher and Sudduth**

Dear Patrick:

I am writing in response to the May 22, 2001 letter of John H. Hauer of CareFirst Administrators that I received from your office last week. Specifically, I am responding to his request that we re-address the denials of the above-referenced claims. We are maintaining our positions as set forth in my letters dated April 11, 2001, April 27, 2001 and May 3, 2001 that were attached to Mr. Hauer's May 22, 2001 correspondence.

Mr. Hauer does not dispute that the conditions at issue were known prior to our September renewal letter. As you know, both the stop loss contract and our claims kit require notification based on "trigger" diagnoses, not just claims that have reached 50% of the deductible, as Mr. Hauer suggests in his letter. In fact, Mr. Hauer attached to his correspondence a letter from you dated July 11, 2000, reminding CareFirst of this obligation and informing them that "[f]ailure to provide these reports may result in a denial of otherwise eligible reimbursements to our mutual client."

Mr. Hauer also attached your July 28, 2000 letter forwarding the RMTS claims kit wherein you stated in pertinent part:

> Written notification of a potential excess claim must also be provided whenever there is a reasonable expectation-based on the claimant's diagnosis and prognosis-that a claimant will exceed the Specific Deductible, _regardless of whether or not the 50% point has been reached._ (emphasis original).

I also note that under cover dated September 18, 2000, RMTS forwarded to CareFirst a copy of our updated claims kit, together with a list of "trigger" diagnoses. As you well know, these reporting requirements have existed since the beginning of the first contract period and are a continuing obligation.



EXHIBIT
3

Mr. Patrick Moore – ASL
D.M. Bowman
June 14, 2001
Page 2 of 2

Moreover, neither Trustmark nor RMTS has any record of receiving 50% notices of these claimants in October 2000, as Mr. Hauer alleges. Even if we had received such notifications, our position would remain unchanged since D.M. Bowman accepted an offer that was clearly based on no known catastrophic claims:

As we stated clearly in our renewal offer:

> [B]e advised that our renewal terms assume that there are no known catastrophic claimants who are currently enrolled or eligible for Health Benefits.
>
> *       *       *
>
> Should our assumption prove to be wrong, we reserve the right to establish separate deductibles or additional premiums retroactive to the August 1, 2000 beginning of the renewal policy period.

The group was aware of catastrophic claimants when the renewal was issued and, months later, when the renewal was signed. The group accepted the terms and conditions of the renewal offer which included the right to establish separate deductibles as set forth above.

Accordingly, we must continue to deny the claims at issue. Should you have any questions or concerns, please contact me.

Very truly yours,

Ronald J. Geck
Associate General Counsel
Director of Claims

cc: Anne M. Buckley, Esquire – RMTS
    David P. Kalm, Esquire – RMTS
    Mark S. Totts – Trustmark