UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| D.M. BOWMAN, INC. | : |
| Plaintiff | : |
| v. | : CASE NO: CCB-02-CV-890 |
| CAREFIRST ADMINISTRATORS f/k/a Willse & Associates, Inc., et al. | : |
| Defendants | : |

**DEFENDANT CAREFIRST ADMINISTRATOR'S
RESPONSE TO PLAINTIFF D.M. BOWMAN'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS AND/OR SUMMARY JUDGMENT**

Defendant CareFirst Administrators, by and through its undersigned counsel, hereby submits this Memorandum in Response to Plaintiff D.M. Bowman's Opposition to Defendant's Motion to Dismiss and/or Summary Judgment.

**ARGUMENT**

A.  **The Court can determine at this time that CareFirst is not a fiduciary, because D.M. Bowman has failed to state a sufficient basis for finding fiduciary status.**

To succeed on a claim under ERISA Section 1109, plaintiff must establish that defendant CareFirst Administrators is an ERISA fiduciary with respect to the Plan, and that it breached its fiduciary duty. *Greenblatt v. Prescription Plan Services Corp.*, 783 F. Supp. 814 (S.D.N.Y. 1992). The burden is on the party alleging that an entity is an ERISA fiduciary to state a sufficient basis for that status. D.M. Bowman ("Bowman") has failed to establish any basis to assert fiduciary status on CareFirst Administrators ("CareFirst"). Conclusory statements of a party's fiduciary status are not

sufficient. Rather, Bowman must provide the facts that indicate CareFirst performed specific fiduciary functions that give rise to fiduciary status. *Sherman v. Pleasant View Nursing Home, Inc.*, 1994 WL 66080 (N.D. Ill. 1994).

In the complaint, Bowman merely alleges that CareFirst performed duties according to the "Claims Processing and Plan Services Agreement" (the "Agreement"). Bowman then asserts the conclusion that CareFirst is a fiduciary to Bowman's self-funded employee benefit plan (the "Plan"). The contract provisions clearly state that CareFirst had only limited authority set forth in the Agreement and was, at all times, subordinate to Bowman. Plaintiff does not contest that the contract terms limit the authority of CareFirst to only ministerial duties, but argues, in essence, that CareFirst exceeded the scope of the Agreement and exercised the requisite authority over the Plan to be deemed a fiduciary. However, Bowman fails to allege any specific facts to support this argument. It is not disputed that CareFirst stayed within the parameters of the Agreement at all times. The Agreement contains the following provisions,

> I.A. It is understood and agreed that the **Claims Processor** ["CareFirst"] is empowered and **required to act** with respect to the Plan **only as expressly stated herein**. The Employer ["Bowman"] hereby authorizes the Claims Processor to do all things and to perform all acts which the Claims Processor deems necessary or appropriate to facilitate claims processing with respect to the Plan. (Emphasis added.)

\*\*\*

> The Employer and the Claims Processor agree that the Claims Processor's **role shall be limited** to that of claims processor under the Plan, that the services rendered by the Claims Processor under this Agreement **shall not include the power to exercise control over Plan assets**, if any, or **discretionary authority over Plan operations**, and that the **Claims Processor will not for any purpose, under ERISA or otherwise, be deemed to be the "Plan Administrator" of the Plan or a "fiduciary" with respect to the Plan**. (Emphasis added).

2

> \*\*\*
>
> The Claims Processor's services hereunder are **intended to and shall consist of those ministerial functions** described in Department of Labor Regulations section 2509, 75-8, D-2... (Emphasis added).
>
> \*\*\*
>
> The Plan's Administrator, for purposes of ERISA, is the Employer. The Plan's benefits and coverages design has been selected by the Employer who is solely responsible for that design.
>
> \*\*\*
>
> C (2) <u>Eligibility for Benefits</u>. The Claims Processor's determination of an applicant's eligibility for benefits **shall be made in accordance with the applicable provisions of the Plan and the Claims Processor shall have no discretion with respect to the application of such provisions.** C (3) <u>Denial of Claims; Review of Denials</u>. If any claim is denied, in whole or in part, the Claims Processor shall, in writing, promptly notify the claimant of the denial, the reasons for the denial, the Plan provisions on which the denial is based, ...The Claims Processor shall forward to the **Plan Administrator all requests for the review of denials and the Plan Administrator shall make a final determination on review**...(Emphasis added).

Plaintiff argues that the disclaimer of fiduciary status alone does not prevent a third party administrator ("TPA") who actually performs fiduciary functions from being an ERISA fiduciary. However, a number of courts have relied on the disclaimer to show that a service provider's role, both actual and intended, was nonfiduciary. In *Bromenn Healthcare v. Northwestern Nat. Life Ins. Co.*, 806 F. Supp.799 (C.D. Ill. 1992), the court found that a TPA with a contract that provided a disclaimer of fiduciary status, together with plan provisions delegating only ministerial duties to the TPA was not a fiduciary. The court noted that the agreement specifically stated that the TPA was not to be deemed the plan administrator for the purposes of ERISA, and that the other plan provisions supported this disclaimer by conferring only certain ministerial tasks to the TPA and retaining discretionary authority and control in the employer. This is directly on point.

3

Not only did the Agreement specifically state that CareFirst was not a fiduciary under ERISA, but further supported this by assigning only ministerial duties to CareFirst, specifically defining those duties, and giving discretionary authority and control to Bowman at all times. To like effect see *Kodes v. Warren Corp.*, 24 F. Supp. 2d 93 (D. Mass. 1998) (A TPA who made initial claim determinations was not an ERISA fiduciary when the agreement disclaimed fiduciary status to the TPA and defined the limited duties of the TPA.).

The issue then becomes whether CareFirst actually performed fiduciary functions. The language in the Agreement clearly and specifically limits CareFirst's authority to merely processing claims according to the terms set forth by the plaintiff. CareFirst had no discretion with respect to the application of those terms. The Agreement specifically provides that CareFirst had no discretionary authority over Plan assets or Plan operations. If, therefore, a claim was denied in accordance with the eligibility provisions, the plaintiff had the final decision.

Bowman is essentially alleging that CareFirst had a duty to perform functions that exceeded the scope of the Agreement. Bowman wants to impose an ERISA fiduciary duty upon CareFirst relating to the Plan by way of a separate contract to which CareFirst was not a party.

CareFirst did not have a contract with TrustMark and was not a party to the contract between TrustMark and Bowman. CareFirst stayed within the ministerial duties of the Agreement with regards to the stop-loss carrier. CareFirst provided the stop-loss carrier with information in accordance with CareFirst standard business practices, as agreed to in the contract with Bowman. The Agreement provided:

> **The Claims Processor shall at no time, including the fiscal year ends, be required to act in a manner which**

4

> **varies from its standard business practices with respect to the submission of claims to any insurance carrier which provides specific stop-loss or similar coverage with respect to the Plan.**

As previously shown in its Memorandum Supporting its Motion for Summary Judgment, CareFirst did not deviate from its standard business practices in submitting claims to insurers during the contract period. Bowman does not contest that CareFirst acted within its standard business practices. CareFirst did not exceed the ministerial duties set forth in the Agreement. Therefore, Bowman's reliance on *IT Corp. v. General Am. Life Ins. Co.*, 107 F.3d 1415 (9th Cir. 1997) is misplaced. Without a showing that CareFirst performed specific fiduciary functions in relation to the Agreement to give rise to fiduciary status, the Motion for Summary Judgment should be granted. The plaintiff in *IT* asserted specific allegations of the defendant's fiduciary functions. The plaintiff was able to show that the fiduciary function performed by defendant related to the Plan at issue. The only allegation that Bowman asserts in the instant case is that CareFirst failed to perform a function in accordance to a contract between TrustMark and Bowman. CareFirst cannot have fiduciary status thrust upon it by a contract to which it was not a party.

By asserting a mere conclusory statement of CareFirst's fiduciary status, Bowman has not met its burden to state a sufficient basis for fiduciary status under ERISA. CareFirst did not perform fiduciary functions and at no time had discretionary authority or control respecting the management of the Plan, nor did it have discretionary responsibility in the administration of the Plan. CareFirst merely processed claims in accordance with the pre-determined criteria set forth by the plaintiff. No argument has been presented that CareFirst exceeded the limitations detailed in the contract. There is

no dispute of these facts as alleged in the complaint, and as a matter of law, CareFirst is not a fiduciary.

B. **CareFirst's Motion for Judgment on Bowman's State Law Claims Should Be Granted.**

   1. **Bowman's remaining state law claims are related to an ERISA plan and are therefore preempted by ERISA.**

The fact that the defendant, CareFirst, is not a fiduciary of the ERISA Plan, does not change the fact that the contract relates to the plan and falls within the scope of ERISA. Hence, state breach of contract, negligence, gross negligence and "non-ERISA" breach of fiduciary duty claims are preempted by ERISA. Section 514(a) of ERISA provides that "any" state laws that "relate to" ERISA plans are preempted. A state-law claim "relates to" an ERISA plan, hence is preempted, "if it has a connection with or reference to such a plan," *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983). Therefore, state common-law tort and contract actions which are "based on alleged improper processing of claim benefits under an employee benefit plan, meet the criteria for preemption under ERISA" *Pilot Life Ins. v. Dedeaux*, 481 U.S. 41 (1987).

There is no dispute that the Bowman Plan is an ERISA Plan. The issue then becomes whether Bowman's state claims against CareFirst are related to or connected with the Plan. The state law claims alleged by Bowman arise out of the contract with CareFirst. The contract is solely based on the Plan, in fact, could not exist without the Plan. The very existence of the contract is to outline CareFirst's duties and obligations to the Plan. Furthermore, Bowman's complaint specifically alleges that CareFirst failed to process claims in accordance with the contract. As cited above, the Supreme Court has made clear that this claim is directly related to the Plan and is preempted. Even state law claims brought pursuant to state laws which do not specifically pertain to employee

6

benefit plans are preempted if the claims arise directly or indirectly from the administration of such plans. *Gibson v. Prudential Ins. Co. of America*, 915 F.2d 414 (9th Cir. 1990).

Plaintiff cites *Stonewall Jackson Mem'l Hosp. V. American United Life Ins. Co.*, 963 F. Supp. 553 (N.D. W. Va. 1997) to support its argument. However, *Stonewall*, is easily distinguished from the present case. *Stonewall* held that state claims brought against an insurer that issued an annuity contract through which pension plan assets were invested were not preempted by ERISA because the legal rights and obligations of the claims flowed from the terms of the contract and not from the ERISA plan. The court pointed out that the Plan was not essential to the operation of the contract, or to the separate rights and duties that it created. This was because the contract was to invest funds of the Plan and did not involve any operations of the Plan itself. The claim arose out of the investments of funds and could be discussed without reference to the operation of the Plan. There is no separation between the Bowman-CareFirst contract and the operations of the Plan. The contract is CareFirst's agreement to perform certain duties and obligations to the claims processing of the Plan. It is impossible for Plaintiff to discuss the contract and not refer to the Plan, they are functionally inseparable.

Similar reasoning also distinguishes the other cases cited in plaintiff's opposition. In *Geweke Ford v. St. Joseph's Omni Preferred Care, Inc.*, 130 F.3d 1355 (9th Cir. 1997), the court held that the claim did not relate to the plan where the basis was failure to repay the plan for expenses arising from a payment under the plan. The reasoning in *Geweke* relied heavily on *Union Health Care, Inc. v. John Alden Life Ins. Co.*, 908 F. Supp. 429 (S.D. Miss. 1995) (no preemption on claims against a third party administrator). However, the opinion in *Union Health Care* specifically stated that the claim against the

7

third party administrator was not preempted because the plaintiff did not allege that the TPA made an error with regards to the plan or was not in strict compliance with the terms of the plan. Instead, the only claim was regarding the reinsurance contract. Bowman, however, is alleging that CareFirst failed its responsibility to the Plan by not providing information to a stop-loss carrier that exceeded the scope of the contract. The very core of Bowman's argument is that CareFirst owed a duty to the Plan beyond the terms of the written agreement. Bowman's claim clearly relates to the ERISA Plan and CareFirst's responsibilities and duties to the Plan. It is Bowman who wants it both ways. Bowman cannot argue that CareFirst's duties to the Plan went beyond the written agreement, then argue that the claim is not preempted because it relates only to the contract and not the Plan. For this reason, the cases cited in support of plaintiff's motion do not support the results it seeks.

The facts of the present case are more aligned with those in *Stiltner v. Beretta U.S.A.*, 74 F.3d 1473 (4th Cir. 1996). In *Stiltner*, the validity of the plaintiff's claim for wrongful denial of benefits under an ERISA plan could not be assessed without determining whether the employer had complied with the obligations placed upon it by the plan. Therefore, non-compliance with the terms of the plan became an element in the plaintiff's cause of action. Hence, the plan's existence was essential to the operation of an otherwise state law based cause of action and was preempted by ERISA. This is directly on point. Bowman's claim that CareFirst did not properly process claims refers directly to the obligations placed upon CareFirst by the Plan. CareFirst was in compliance with the contract, yet Bowman alleges CareFirst owed a higher duty to the Plan. The existence of the Plan is ultimately essential to the claims asserted by plaintiff and is therefore preempted.

### 2. The material facts not in dispute make clear as a matter of law that CareFirst did not breach a contract with plaintiff.

As previously stated in the Motion for Summary Judgment, the Claims Processing Agreement, or "the contract" unambiguously sets forth the respective roles and obligations of both Bowman and CareFirst. It is clear from the contract that CareFirst was under no obligation to supply specified information or reports to stop loss carriers. Bowman contends that CareFirst breached the contract by failing to provide a stop loss carrier with a list of "trigger diagnosis" according to a "claims kit." It is undisputed that the contract does not contain any reference to a "trigger diagnosis" or "claims kit". Instead, Bowman wants to unilaterally add terms and conditions to the contract that do not exist, then ask this Court to acknowledge the non-existent terms. In fact, Bowman's argument that a material fact exists is based solely on these phantom obligations. The Court should not allow a party to conjure up additional terms to a contract and then claim that there is a factual dispute.

In addition, Bowman cites a string of cases stating that contracts can be modified by conduct and not necessarily in writing. Yet, Bowman does not allege that conduct by CareFirst modified the agreement. Instead, Plaintiff continues to refer to the insurance agreement entered into by Bowman and TrustMark, to which CareFirst was not a party. CareFirst abided by its agreement with Bowman and provided the stop loss insurer with information within the standard business practices that were used throughout the contract with Bowman, a contract that existed before plaintiff entered into its agreement with TrustMark. CareFirst did not breach the contract, nor did it modify the contract. It performed under it.

9

It is clear that no breach of contract has occurred. Plaintiff cannot create disputes that do not exist and it cannot hold CareFirst liable for a contract that Plaintiff entered into with a third party.

### 3. There is no dispute of material fact over whether CareFirst acted negligently.

As indicated above, CareFirst's only obligation to Bowman was the one arising under the Claims Processing Agreement. CareFirst fulfilled its obligations under the terms of the contract. Plaintiff's charge that CareFirst had a duty to assist Bowman in connection with Bowman's contract with TrustMark, with whom CareFirst had no contract, does not withstand scrutiny. Bowman argues that CareFirst undertook this duty and then performed in a negligent manner that caused loss to Bowman. *See* Bowman Opposition at 15. However, this ignores the fact that under the contract no undertaking of duty exists. Bowman concedes that "the initial (and undisputed) contractual duty to transmit information to Bowman's stop loss insurer did not include the obligation to submit "trigger diagnosis" in the manner specified in TrustMark's "claims kit." *See* Bowman Opposition at 15. Bowman has never alleged specific facts of CareFirst's supposed undertaking of additional duties; hence, the argument of negligence in any form fails on the face of the complaint.

CareFirst's arguments are not inconsistent as plaintiff alleges. CareFirst fulfilled its obligations under the contract and did not take on any additional duties; therefore, there is no breach of contract or negligence. Bowman continues to base its complaint on allegations that do not exist. The only dispute over the scope and nature of defendant's contractual duties is within the mind of the plaintiff. There have not been any independent duties on the part of CareFirst asserted for this Court to consider, thus the tort claims fail as a matter of law.

## CONCLUSION

For the foregoing reasons Defendant CareFirst prays for judgment in its favor dismissing all counts of Plaintiff's Amended Complaint and any other relief this court deems appropriate.

Respectfully submitted,

CAREFIRST ADMINISTRATORS

By: _____
Charles J. Steele
MD Bar. No.: 01613
CareFirst BlueCross BlueShield
550 12th Street, S.W.
Washington, DC 20065
Telephone: (202) 479-6181
Facsimile: (202) 479-3518
Attorney for Defendant,
CareFirst Administrators

11

CERTIFICATE OF SERVICE

I CERTIFY that a copy of this Reply Memorandum was mailed this 15th day of April, 2003, postage pre-paid to:

Kelly J. Davidson, Esquire
David L. Cole, Jr., Esquire
Ober, Kaler, Grimes & Shriver
A Professional Corporation
120 E. Baltimore Street, 8th Floor
Baltimore, Maryland 21202-1643
(410) 685-1120 Telephone
(410) 547-0699 Facsimile
Counsel for Plaintiff

Angela W. Russell, Esquire
David A. Seltzer, Esquire
Wilson, Elser, Moskowitz, Edelman, & Dicker, LLP
The Colorado Building
1341 G Street, N.W., Suite 500
Washington, D.C. 20005
(202) 626-7660 Telephone
(202) 628-3606 Facsimile
Counsel for Defendant
TrustMark Insurance Co. and Third-Party Defendant RMTS Associates, LLC

Paul M. Finamore, Esquire
Brett A. Buckwalter, Esquire
Niles, Barton & Wilmer, LLP
111 South Calvert Street, Suite 1400
Baltimore, Maryland 21202
(410) 783-6300 Telephone
(410) 783-6363 Facsimile
Counsel for Third-Party Defendant
American Stop Loss Insurance Brokerage Services, Inc.

Edward J. Baines, Esquire
Jennifer B. Speargas, Esquire
Saul Ewing, LLP
100 South Charles Street
Baltimore, Maryland 21201
(410) 332-8853 Telephone
(410) 332-8174 Facsimile
Counsel for Third-Party Defendant
Willis of Maryland, Inc.

Charles J. Steele